642 P.2d 563

**Gerald TRUNNELL and Doris Trunnell, husband and wife, Plaintiffs-Appellants,**

**v.**

**Kenneth A. GENTRY and Sandra J. Gentry, husband and wife; and Lomas & Nettleton Company, a Corporation, Defendants-Respondents,**

**v.**

**NAMPA LAND TITLE COMPANY, INC., an Idaho corporation and Rod Astleford, individually, Third-Party Defendants and Respondents,**

**v.**

**ESTATE OF Iola M. DORAMUS, Deceased, and Ralph Snow, Personal Representative of said Estate, Other Third-Party Defendants and Respondents.**

No. 13557.

Court of Appeals of Idaho.

March 16, 1982.

Richard B. Eismann, Eismann Law Office, Homedale, for plaintiffs-appellants. Daniel T. Eismann, Homedale, on oral argument.

Moffatt, Thomas, Barrett & Blanton, Boise, for defendant-respondent Lomas & Nettleton Co. Loren C. Ipsen, Boise, on oral argument.

Kenneth D. Roberts, Caldwell, and Kenneth F. White, Nampa, for defendants-respondents Gentry. Kenneth D. Roberts, Caldwell, on oral argument.

Green & Sullivan, Boise, for third-party defendant and respondent Nampa Land Title Co., Inc., appearing but not arguing.

Graydon W. Smith, Boise, for other third-party defendants and respondents Doramus Estate & Ralph Snow, appearing but not arguing.

WALTERS, Chief Judge.

This matter is on appeal from an order entered by the trial court terminating the right of the Trunnells to exercise an option to purchase certain real property from the estate of Iola M. Doramus, deceased. We *reverse*.

In August, 1974, the Trunnells and Mrs. Doramus executed a written lease agreement allowing the Trunnells to farm property owned by Mrs. Doramus in Canyon County, Idaho. The agreement was for a three year period. The agreement also granted an option to the Trunnells to purchase the property. The Trunnells recorded the contract in the Canyon County recorder's office within two days after it was executed.

Prior to the expiration of the lease, Mrs. Doramus purported to sell the property to the Gentrys by warranty deed. The Gentrys obtained funds to purchase the property, by a mortgage arrangement with Lomas & Nettleton Company after receiving a title report from Nampa Land Title Company. Less than two months after the sale to the Gentrys, Mrs. Doramus passed away. Shortly thereafter, the Trunnells commenced this action to have their lease-option agreement declared valid and superior to the interests of all other parties named in this suit.

Trial was held before the court in December, 1977. By written Memorandum Decision, the court made several factual findings and concluded the lease-option right was valid and enforceable. The court found the provision in the lease for exercise of the option had been so "thwarted" by Mrs. Doramus, that it would be equitable to allow Trunnells a period of thirty days within which to exercise their option. The court ruled that the Trunnells

"... may exercise their option to purchase said premises, if they so desire, within 30 days of the filing of the order and judgment to be signed in accordance with this memorandum decision, said filing to be evidenced by the filing stamp of the clerk of the court."

The court then directed that:

"Counsel for ... [the Trunnells] will please prepare and submit formal findings of fact, conclusions of law and judgment order in conformity with this Memorandum Decision. Opposing counsel of course have the right to object to the same and only after examination will such proposed findings and conclusions be adopted as mine, if correct. If not correct, such findings and conclusions will be corrected and when finally adopted, such become mine and no longer will they be considered as proposed by counsel."

The Memorandum Decision, issued on February 8, 1978, was not filed by the court at that time. The case remained pending while the parties prepared for litigation of other issues remaining in the suit. By letter dated August 28, 1979, the trial judge advised the parties' counsel, that he had never received the proposed findings, conclusions, and order and judgment in conformity with the Memorandum Decision. He observed:

"It appears that all counsel have subsequently acted as if formal findings, conclusions and judgment had been filed or that said Memorandum Decision were sufficient to settle the matter as to the validity of the lease-option. To date, I have not caused that memorandum to be filed. It would appear that if counsel would stipulate that said Memorandum Decision be treated as the formal findings and conclusions I could so file the same. In the absence of such stipulation it would appear that counsel for ... [the Trunnels] should at first opportunity prepare formal findings and conclusions and judgment for signature."

Referring to a pending motion to consolidate certain other issues the trial judge further observed:

"It would appear that until and unless the option is exercised within 30 days of the execution of a formal order by paying of the $5000 mentioned in the Memorandum Decision I should make no ruling on the motion to consolidate."

A flurry of activity then occurred on September 13 and 14, 1979. The Memorandum Decision was filed on September 13; that same day both the Doramus estate and Lomas & Nettleton filed motions to terminate the lease-option; and on September 14, the Trunnels filed and served notice of exercise of the option, and submitted proposed findings of fact and conclusions of law and a form of proposed judgment. The Trunnels also tendered the $5000 required to exercise the option. They noticed for hearing the motions to terminate the option.

A hearing was then held on October 19, 1979, following which the court entered a written order granting the motions and terminating the lease-option. The bases for the motions to terminate, and the rationale of the court in granting the motions, were that an unreasonable delay occurred from February 8, 1978, until September 14, 1979, for the preparation of proposed findings,

conclusions and judgment. The court found resulting "prejudice, financial and otherwise" to all parties in the suit except the Trunnels, and that the delay resulted in a financial advantage to the Trunnels. The court concluded that because the delay was within the Trunnels' control, equity should decree that the lease-option be terminated, cancelling and extinguishing all rights of the Trunnels to purchase the property.[1]

In our view the responsibility for undue delay in preparation of the findings of fact and conclusions of law falls as much on the shoulders of the trial court as with the Trunnels' counsel in this case. At the hearing on the motion to terminate the option right, the court acknowledged it was aware of the disapproval of the Idaho Supreme Court of the practice of relegating preparation of findings of fact and conclusions of law to a party's attorney. See *Compton v. Gilmore*, 98 Idaho 190, 560 P.2d 861 (1977). The trial court observed that his Memorandum Decision "was sufficiently clear. The preparation of findings of fact and conclusions of law wouldn't have been too difficult." Here the court delegated that responsibility without setting a deadline to accomplish the task. Apparently, failure to carry out that responsibility was overlooked by all concerned until the court's letter of August 28, 1979. Even then the court encouraged counsel to prepare the formal findings, conclusions and judgment, at the "first opportunity."

When the court discovered it had not received proposed findings, conclusions, and a judgment within what it deemed to be a reasonable time after February 8, 1978, the court, being responsible for the administration of the litigation, had available at least two remedial courses of action preferable to what happened here. It could have filed and adopted the Memorandum Decision as its findings and conclusions by order pursuant to I.R.C.P. 52(a); or it could have pre-

1. As a result of this course of events, no formal findings of fact, conclusions of law or judgment were ever entered following the trial held in December, 1977. Moreover, the practical effect of the order terminating the lease-option

was to deny the claims of the Trunnels to the property in question. The order was certified by the trial court as a final judgment for the purposes of appeal.

pared and filed its own formal findings and conclusions. Thereafter an appropriate judgment and order regarding the lease-option right should have been entered. The perceived prejudice to other parties from the delay could have been (and still could be) alleviated other than by terminating the purchase option.

Both at the arguments on the motions to terminate the lease-option, and upon this appeal, I.R.C.P. 41(b) was urged as a basis for granting the termination. That rule allows for dismissal of an action for failure to comply with any order of the court. The order of the trial court terminating the lease-option does not purport to be based upon that rule. We find the rule to be inapposite. The wording of the Memorandum Decision is not couched in the language of an order; nothing is "ordered" to be done in that memorandum. It simply and politely requests, as did the letter of August 28, 1979, that counsel for the Trunnells prepare and submit proposed findings, conclusions, and a form of judgment to the court.

■ The order terminating the option was inconsistent with the trial court's prior actions. It was a surprise order, depriving the Trunnells of a substantive property right due to an alleged procedural oversight by counsel and the court. Substantive rights should not be cancelled due to procedural difficulties unless required by law or rule, and, where appropriate, an opportunity to correct the problem has been afforded. *Cf. Bunn v. Bunn*, 99 Idaho 710, 587 P.2d 1245 (1978); *Stoner v. Turner*, 73 Idaho 117, 247 P.2d 469 (1952).

■ We conclude that it was error for the court to terminate the right to exercise the lease-option, when that right had never been granted or established by a formal order or judgment entered in these proceedings. The order terminating the lease-option is reversed and the matter is remanded with directions to the trial court to enter appropriate findings of fact, conclusions of law, and a judgment consistent with its memorandum decision of February 8, 1978.

No costs or attorney fees.

BURNETT and SWANSTROM, JJ., concur.